## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**JOSHUA EUGENE ROBINSON,**
**        Petitioner,**

**v.**                                                    **Case No. 3:10cv101 RV/MD**

**KENNETH S. TUCKER,**
**        Respondent.**

_____

### REPORT AND RECOMMENDATION

Before the court is Joshua E. Robinson's ("Mr. Robinson") March 31, 2010 petition for writ of habeas corpus filed pursuant to Title 28 U.S.C. § 2254 (doc. 1)[1]. Respondent has filed a response (doc. 15) to which Mr. Robinson replied (doc. 26). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by Mr. Robinson, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).   It is further the opinion of the undersigned that the pleadings and attachments before the court show that Mr. Robinson is not entitled to relief, and that the petition is without merit and should be denied.

---

[1]**Respondent concedes that the petition was timely filed (doc. 15, p. 5-6).**

## BACKGROUND AND PROCEDURAL HISTORY[2]

On June 30, 2004 the petitioner, Joshua Eugene Robinson, was charged by information with (1) attempted first degree premeditated murder with a firearm and (2) possession of a firearm by a convicted felon in the Circuit Court of Escambia County, Florida (doc. 15, ex. B).[3]   The charges were severed for trial.  A jury found him guilty on count 1, specifically finding that he possessed a firearm and discharged it causing great bodily harm (ex. H).  A separate jury found him guilty on count 2.   His federal petition addresses only the attempted first degree murder conviction (doc. 1).  On that count he was sentenced to 30 years imprisonment with a 25 year minimum mandatory (ex. I and J).  In his direct appeal to the Florida First District Court of Appeal ("First DCA"), Mr. Robinson contended that (1) the trial court erred in admitting a recorded telephone conversation, (2) there was fundamental error when the prosecutor expressed his personal opinion on the content and meaning of the recording, and (3) the trial court erred in denying his motion for judgment of acquittal (ex. L).  The First DCA affirmed  the conviction and sentence without opinion.  *State v. Robinson,* 965 So.2d 1146 (Fla. 1st DCA 2007) (Table); ex. O.

Mr. Robinson then filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure in which he raised three claims of ineffective assistance of counsel: (1) counsel failed to object to the prosecutor's improper comments, (2) counsel failed to present an expert witness to interpret the meaning of the recorded conversation, and (3) counsel conceded Mr. Robinson's

---

[2]The facts stated herein are those presented at trial and viewed in the light most favorable to the prosecution.  Due process requires a state to prove each element of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  When a federal court examines the sufficiency of the evidence on review, the role of the court is not to reweigh the evidence or to determine whether the evidence established guilt beyond a reasonable doubt.  *Id.* at 319.   Although this court is not called on to address directly the sufficiency of the evidence, the evidence presented to the jury plays a major part in the court's analysis.

[3]Hereafter all references to exhibits will be to doc. 15 unless noted otherwise.

guilt in his summation (ex. P).  The Rule 3.850 court denied the motion in a written opinion without a hearing (ex. Q).  Mr. Robinson's appeal to the First DCA of that order was unsuccessful.  *State v. Robinson*, 22 So.3d 75 (Fla. 1st DCA 2009) (Table); ex. S.  Mr. Robinson then filed a petition for writ of habeas corpus in the appellate court contending that appellate counsel was ineffective for failing to raise several issues, discussed below (ex. U).  The motion was denied (ex. V).

In the instant habeas proceeding Mr. Robinson raises fourteen grounds for relief.  The first four allege trial court and appellate error; the next three allege ineffective assistance of trial counsel; the next three allege error by the Rule 3.850 court; the final four allege error by the appellate court and ineffective assistance of appellate counsel.  As discussed fully below, Mr. Robinson is not entitled to federal habeas relief on any ground.

## TRIAL EVIDENCE

Relative to the conviction and sentence challenged here, the state alleged that on May 29, 2004, with premedMation to kill, Mr. Robinson carried a firearm, which was discharged, resulting in great bodily harm to Ishmael Lee Nettles ("Mr. Nettles") (ex. B).  The state presented nine witnesses (ex. F, p. 2).  David Mallen testified that he was a crime scene technician who took photographs, presented to the jury, showing blood on the steering wheel and on the console to the right of the driver's seat in a red Pontiac Trans Am (ex. F, pp. 137-42).  Sally Barnes testified that she was an EMT who picked up the victim at the scene.  *Id*. at 144-48.  She explained that the victim had what appeared to be a bullet entrance wound in his right cheek.  *Id*.

The victim, Mr. Nettles, testified that he was 18 years old and had recently purchased the red Trans Am.  *Id*. at 150.  He lived in Cantonment, north of Pensacola.  *Id*.  On the night in question, May 29, 2004, he discovered that his brake lights were not working and was driving around trying to find a gas station or other shop that could repair his car.  *Id*. at 151-52.  He was in an area of Pensacola with which he

was not familiar.  *Id*. at 153.  He noticed a man on a bicycle passing him in the opposite direction and got a quick glimpse of his face.  *Id*. at 155-56.  He then stopped at a four-way stop or stoplight.  *Id*. at 156.  He suddenly felt a shock and his body stiffened up.  *Id*. at 156-57.  He realized he had been shot.  *Id*. at 158.  In the rear view mirrors he was able to see a face and said it was the same person who passed him on the bicycle.  *Id*. at 159-61.  He saw the person picking up his bicycle.  *Id*.  Mr. Nettles had trouble moving but somehow got his car into the parking lot of a club where he was ultimately helped and taken to the hospital.  *Id*.  On June 10, 2004, a detective came to his home and showed him an array of photographs.  *Id*. at 163-65. He was told that the person the police were investigating may or may not be in the array.  *Id*.  He immediately identified the photograph of Mr. Robinson.  *Id*.  At trial he also positively identified Mr. Robinson as the person who shot him.  *Id*. at 166-67, 185-86.

Latasha Hankins, medical records manager at Baptist Hospital, produced and authenticated Mr. Nettles' hospital records.  *Id*. at 189-91.  Lisa Hughey testified that she was a crime scene technician who swept Mr. Nettles' car for prints.  *Id*. at 194-206.   She lifted a number she thought may be adequate for identification, 73 to be exact.  *Id*.  Lafe Highfill testified that he was a latent print examiner with the Escambia County Sheriff's Office.  *Id*. at 207-208.  He examined all the images lifted by Ms. Hughey, but did not find any that met Mr. Robinson's prints.  *Id*. at 213.

Detective Mike Miller testified that he was assigned to Mr. Nettles' case and was involved in its investigation since its inception.  *Id*. at 216.   During his investigation he took Mr. Nettles back to identify the crime scene.  *Id*. at 217-18.  He later on took a photo array to Mr. Nettles at his residence.  *Id*. at 223-224.   He cautioned Mr. Nettles that the array may or may not contain a photograph of the suspect.  *Id*. at 226.  Mr. Nettles immediately positively identified the photograph of Mr. Robinson as portraying the man who shot him.  *Id*. at 226-28.  Detective Miller

also obtained a copy of an outgoing telephone call recording in which Mr. Robinson called a friend, Dominique Austin, from the county jail.  *Id*. at 229-232.

Dominique Austin testified that she went by the name of "Diamond."  *Id*. at 265.  Soon after the shooting she was called by Mr. Robinson, whom she knew as "L. C." and whom she knew to ride a bicycle.  *Id*. at 263-65.  She could not remember the contents of the call, but after listening to it outside the presence of the jury, positively identified Mr. Robinson as the caller and herself as the person called.  *Id*. at 240-42, 265.

Over objection of defense counsel, the telephone recording was then played for the jury.  *Id*. at 270-72.  The court transcript reads as follows:

> OPERATOR: Hello. This is a collect call - -
>
> THE DEFENDANT:  - - this is L.C., Diamond - -
>
> OPERATOR: - - an inmate from the Escambia County Sheriff's Office.  To accept charges, press zero.  To refuse charges, press one.  To prevent calls from this facility, press six.  This call is subject to monitoring and recording.  Thank you for using Sprint.
>
> THE DEFENDANT:        Hello?
>
> MS. AUSTIN:        Hello.
>
> THE DEFENDANT:        Hello.
>
> MS. AUSTIN:        Who is this?
>
> THE DEFENDANT:        This is L. C.
>
> MS. AUSTIN:        Who?
>
> THE DEFENDANT:        L. C.
>
> MS. AUSTIN:        L. C.?
>
> THE DEFENDANT:        (Inaudible.)

MS. AUSTIN:            Huh?

THE DEFENDANT:        (Inaudible.)

MS. AUSTIN:            Uh-huh.

THE DEFENDANT:        What's up?

MS. AUSTIN:            What's up?

THE DEFENDANT:        (Inaudible.)

MS. AUSTIN:            What?

THE DEFENDANT:        (Inaudible.)

MS. AUSTIN:            L. C.?   Where do I know you from?

THE DEFENDANT:        (Inaudible) nigger on the bike that day.

MS. AUSTIN:            Huh?

THE DEFENDANT:        The nigger on the bike.

MS. AUSTIN:            Oh, yeah.

THE DEFENDANT:        I'm in jail.

MS. AUSTIN:            Why you in jail?

THE DEFENDANT:        You know that nigger they talking about shot them niggers?

MS. AUSTIN:            Yeah.

THE DEFENDANT:        That's me.

MS. AUSTIN:            Mmm.

*Id.* at 271-72, 281-83.

Mr. Robinson testified and denied that he shot Mr. Nettles. *Id.* at 275-77, 280-81. He was not aware of the incident until he was arrested. *Id.* at 275-77. He speculated that he either spent the night in question in Pensacola with a guy he knew or with a girlfriend, but he could not remember because he was arrested two weeks after the shooting. *Id.* at 275-77, 280-81. He admitted to the telephone call, but said that when he said "That was me" he meant he was the one they had arrested, not that he was the one who did the shooting. *Id.* at 277-78. He also conceded that he had two prior felony convictions. *Id.* at 278. He grew up around the neighborhood where the shooting occurred, and still has friends there. *Id.* at 278-80. He rides his bike everywhere because he does not have a driver's license. *Id.* at 279-80, 286.

## STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19 (1996). In relevant part, Section 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2006).

The Supreme Court explained the framework for Section 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] Section 2254(d)(2) must be divided into two separate inquiries:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412–13 (O'Connor, J., concurring). The federal habeas court "determining whether [it] should overturn the state courts' [sic] rejection of the claim at issue" should "review the highest state court decision disposing of the claim." *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1237 (11th Cir. 2011); *see also Knowles v. Mirzayance*, 556 U.S. 111, 129 S. Ct. 1411, 173 L. Ed. 2d 251(2009).

Following the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when the Supreme Court's holding embodies the legal principle; dicta in opinions is not controlling. *Thaler v. Haynes*, __ U.S. __, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010). Furthermore, a federal court of appeals decision, "even a

---

[4] Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

holding directly on point," cannot clearly establish federal law for Section 2254 purposes. *Bowles*, 608 F.3d at 1316 (citing *Renico v. Lett*, __ U.S. __, 130 S. Ct. 1855, 1866, 176 L. Ed. 2d 678 (2010)).

After identifying the governing legal principle, the court determines whether the state court adjudication is "contrary to" clearly established Supreme Court case law, either because the state court "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or because it "confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141, 125 S. Ct. 1432, 161 L. Ed. 2d 334 (2005); *see* 28 U.S.C. § 2254(d)(1).  The state court does not need to cite to Supreme Court cases or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of petitioner's claim.

If the state court decision is not contrary to clearly established federal law, the federal habeas court must then determine whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 412–13.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle was "objectively unreasonable" in light of the record the court had before it.  *Williams*, 529 U.S. at 409; *see Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d 557 (2011) (holding new evidence introduced in federal habeas court has no bearing on Section 2254(d)(1) review, rejecting dicta in *Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam)).  A state court's application of federal law is objectively unreasonable when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or

unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Brown*, 544 U.S. at 141.  However, a state court may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles*, 556 U.S. at 261.  Notably, even a state court's incorrect application of law will not warrant federal habeas relief unless it is also objectively unreasonable.  *See Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 785-86, 178 L. Ed. 2d 624 (2011).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the Supreme Court applies the "objectively unreasonable" test to the state court's factual determination.  *Miller-El v. Cockrell*, 537 U.S. 322, 324, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (dictum).  Petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct.  *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); 28 U.S.C. § 2254(e)(1).

The Eleventh Circuit in *Gill* clarified how the federal habeas court should address the "unreasonable application of law" and the "unreasonable determination of facts" tests.  *Id.* at 1288-89.  Mr. Gill's petition alleged he was denied his Sixth Amendment right to counsel.[5]  *Id.* at 1288.  The Eleventh Circuit granted a limited Certificate of Appealability to determine the precise issue of the validity of "summary

---

[5]  Mr. Gill twice moved the trial court in pretrial hearings to allow him to waive his Sixth Amendment right to counsel.  *Gill*, 633 F.3d at 1275-84; U.S. Const. amend. VI.  The trial court denied the first motion concluding that Mr. Gill's waiver of counsel was not knowing and intelligent.  *Gill*, 633 F.3d at 1278; *see Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (accused must "knowingly and intelligently" waive representation).  The trial court also denied the second motion, but allowed Mr. Gill to act as co-counsel for himself only for determining trial strategy.  *Gill*, 633 F.3d at 1284. After Mr. Gill was convicted and timely requested post-conviction relief, the Florida Second District Court of Appeal ("Second DCA") affirmed without opinion the trial court's denial of said relief.  *Id.* at 1284-85.  Mr. Gill then filed a petition in federal court, which the district court denied with prejudice.  *Id.*

affirmance by a state appellate court of a trial court's decision based on potentially flawed reasoning." *Id.* at 1286.[6]

The *Gill* court acknowledged the well-settled principle that summary affirmances, such as the Second DCA's, are presumed adjudicated on the merits and warrant deference. *Id.* at 1288 (citing *Harrington*, 131 S. Ct. at 784-85 and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id.* at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244-45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit in *Gill* concluded that district courts must apply the plain language of Section 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of the state court's process of reasoning." *Id.* at 1291 (agreeing with the Fifth Circuit court in *Neal*, 286 F.3d at 244-45). In short, the Eleventh Circuit held that "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*[7]

---

[6] The Eleventh Circuit reviewed Mr. Gill's claims that the district court erred in its habeas corpus analysis as to two issues. First, Mr. Gill argued that the habeas court erred by "failing to review on the merits the 'legally and factually unsupported rationale' articulated by the state trial court." *Gill*, 633 F.3d at 1288. Second, Mr. Gill argued the habeas court's decision was *per se* erroneous because it "relied on a finding that the state court did not make." *Id.* Specifically, Mr. Gill averred that the trial court denied relief by finding that his Sixth Amendment waiver was not knowing and intelligent, while the federal district court denied relief by finding that he "never clearly and unequivocally" waived his right to counsel. *Id.*

[7] Applying this analysis, the Eleventh Circuit rejected Mr. Gill's claim that the district court erred by relying on different grounds than the trial court because Mr. Gill's basic premise—the Second

In light of *Gill*, the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it.  *Id.* at 1292.  A federal habeas court can consider the full record before it in order to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable.  *Lockyer*, 538 U.S. at 64; *Gill,* 133 F.3d at 1290.

The Supreme Court recently summarized the meaning and function of habeas corpus in the federal system:

> Under §2254, a habeas court must determine what arguments or theories supported or . . . could have supported [ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding of a prior decision of this Court.

*Harrington,* 131 S. Ct. at 786.  Federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's conclusion."  *Id.* (internal quotations omitted)

The federal habeas court will take the final step of conducting an independent review of the merits of petitioner's claims only if it finds that petitioner satisfied AEDPA and Section 2254(d).  *See Panetti v. Quarterman*, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).  The writ will not issue unless petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  When performing its review under Section 2254(d), the federal court must resolve all claims for relief regardless of whether habeas relief is granted or denied.  *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see also Puiatti v. McNeil*, 626 F.3d 1283, 1307 (11th Cir. 2010).  The federal court must also bear in mind that state court factual determinations are

---

DCA's summary affirmance relied on the trial court's statements from the bench—was not dispositive. *Id.* at 1288.

presumed to be correct, and petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also* *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002) (AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson v. Anderson*, 112 F.3d 823, 824-25 (noting petitioner has heavier burden to overcome the presumption of factual correctness).  "If this standard is difficult to meet, that is because it was meant to be."  *Harrington*, 131 S. Ct. at 786.

## OTHER CONTROLLING LEGAL PRINCIPLES

### Ineffective assistance of counsel

Petitioner contends in his grounds for relief before this court that he was denied his constitutional right to the effective assistance of counsel.   The Constitution provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right. . .to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.  To prevail on a claim of ineffective assistance of counsel, petitioner must prove that:    (1) "counsel's representation fell below an objective standard of reasonableness;" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 677-78, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *see also Berghuis v. Thompkins,* __ U.S. __, 130 S. Ct. 2250, 2264-65, 176 L. Ed. 2d 1098 (2010).  Reasonableness of representation does not implicate what is possible, prudent, or even appropriate, but only what is "constitutionally compelled."  *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citing *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 97 L. Ed. 2d 638 (1987)).

In evaluating counsel's performance, reviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable,

professional assistance.  *Chandler*, 218 F.3d at 1314.  Courts must make "every effort. . .to eliminate the distorting effects of hindsight" and must evaluate the reasonableness of counsel's performance "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Chandler*, 218 F.3d at 1314 (the *Strickland* standard compels courts to "avoid second-guessing counsel's performance").  The Eleventh Circuit has summarized the standard and the burden:

> Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioner's to bear, is and is supposed to be a heavy one.  And, "[w]e are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial . . . worked adequately."  *See White v. Singletary*, 972 F.2d 1218, 1221 (11th Cir. 1992).  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994); *see also Waters v. Thomas*, 46 F.3d 1506, 1518 (11th Cir. 1995) (the test is not whether counsel could have done more); *Atkins v. Singletary*, 965 F.2d 952, 960 (11th Cir. 1992) (". . .the Constitution requires a good deal less than maximum performance.")

In order to meet the prejudice prong of the *Strickland* standard, petitioner must allege more than that the unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland,* 466 U.S. at 693; *see also Marquard v. Sec'y for Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005). Petitioner must show a reasonable probability exists that the outcome would have been different.  *Frazier v. Bouchard*, 661 F.3d 519, 532 (11th Cir. 2011); *Marquard*, 429 F.3d at 1305 (petitioner's burden under the prejudice prong is high); *Strickland*, 466 U.S. at 694.  In applying *Strickland*, the court may dispose of an ineffective assistance claim if petitioner fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697 ("If  it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed.").

The *Strickland* standard exists to prevent petitioners from abusing the post-trial process by escaping rules of waiver or presenting new issues; it should be "applied with scrupulous care" to protect the integrity of the adversary process. *Harrington*, 131 S. Ct. at 788.   As it relates to habeas corpus applications, the Supreme Court emphasized:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).   When § 2254(d) applies, the question is not whether counsel's actions were reasonable.   The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted); *Knowles*, 556 U.S. at 262 (*Strickland* claims evaluated under § 2254(d)(1) require "doubly deferential" judicial review).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999).  "'The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable, [which] is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'"  *Jones v. Sec'y, Dep't of Corr.*, 644 F.3d 1206, 1209 (11th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 785).  Habeas claims of ineffective assistance of counsel require "doubly deferential" judicial review under Section 2254(d) and *Strickland*, and petitioners only rarely prevail on this ground.  *See Rogers*, 13 F.3d at 386.

**Exhaustion of state remedies and procedural default**

A petitioner defaults on an issue unless the petitioner first exhausts available state court remedies so the state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (per curiam); *see* 28 U.S.C. § 2254(b)(1)(A) (applicant must exhaust available state court remedies); 28 U.S.C. § 2254(b)(3) (state may rely on exhaustion requirement unless it expressly waives the right). *But see* 28 U.S.C. § 2254(b)(2) (application may be denied on the merits even when applicant fails to exhaust state remedies).   To satisfy the exhaustion requirement, petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365-66; *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (same).  This affords the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

"Fair presentation" requires that, in each claim for relief, petitioner include a reference to a specific federal constitutional guarantee and a statement of the facts that entitle petitioner to relief. *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971).  To satisfy the exhaustion requirement, petitioner must present the same facts and claims in state court about which he petitions the federal court. *Id.*  Appeals to a broad, general constitutional guarantee also fail to present the "substance" of such a claim to the state court.  *See Anderson v. Harless*, 459 U.S. 4, 7, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982) (petitioner cited federal authority only by referring to a state court decision in which "the defendant. . . asserted a broad federal due process right to jury instructions that properly explain state law" (internal quotation marks omitted)).  A state prisoner's claim is not fairly presented if the state court "must read beyond a petition or a brief (or a similar document) that

does not alert it to the presence of a federal claim in order to find material. . ..” *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004).  However, when a petitioner squarely raises a federal constitutional claim in state court, the “failure of a state court to mention a federal claim does not mean the claim was not presented to it.”  *Dye v. Hofbauer*, 546 U.S. 1, 3, 126 S. Ct. 5, 163 L. Ed. 2d 1 (2005). And, simply labeling the claim “federal” may be sufficient to fairly present the claim. *Baldwin*, 541 U.S. at 32 (dictum)*.*

The Eleventh Circuit requires specific reference to the United States Constitution and favors citations to federal cases.  *Zeigler v. Crosby*, 345 F.3d 1300, 1307-08 and n.5 (11th Cir. 2003) (“Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the Florida courts the federal claim asserted to us.”).  This stricter standard requires petitioner to differentiate a claim under the United States Constitution from one under a state constitution.  *Id.* at n.5; *McNair v. Hall*, 416 F.3d 1291, 1302-03 (11th Cir. 2005) (“a habeas applicant [must] do more than scatter some makeshift needles in the haystack of the state court record” (internal citations omitted)).  If state and federal constitutional law overlap in their applicability to petitioner’s claim, he must raise his issue in terms of the federal right in state court to obtain federal review of the issue.  *Duncan*, 513 U.S. at 366; *see also Anderson*, 459 U.S. at 7 and n.3 (petitioner’s citation to a state-court decision predicated solely on state law is probably insufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited state case advanced a federal claim).

A claim is procedurally defaulted and barred from federal review in two instances: (1) if it was raised in state court and rejected on the independent and adequate state ground of procedural bar or default; or (2) if it was not properly raised in state court and can no longer be litigated under state procedural rules. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *see also Judd v.*

*Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (state court's rejection of petitioner's constitutional claim on state procedural grounds generally precludes subsequent federal habeas review of that claim).  Unless the federal court determines the state court "clearly and expressly" relied on independent and adequate state grounds, the federal court may address the petition.[8]  *Coleman*, 501 U.S. at 735.  However, when any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine, the default is *per se* adequate state grounds independent of the federal question.  *Id.* at 735 n.1; *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989) (federal habeas court need not require a federal claim be presented to a state court if the state court would hold the claim procedurally barred).

The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  *Lee*, 534 U.S. at 375.  To foreclose federal review, the state procedural bar must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991).  A state procedural bar is firmly established and regularly followed when the state has put litigants on notice of the rule, and the state has a legitimate interest in the rule's enforcement.  *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006).

To overcome a procedural default so that the federal habeas court may reach the merits of a claim, petitioner must show either "cause for the default and actual prejudice resulting therefrom," or a fundamental miscarriage of justice.  *Kelley v. Sec'y for the Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004); *High v. Head*, 209 F.3d 1257, 1261 (11th Cir. 2000).  Cause exists when an external impediment, such as governmental interference or the reasonable unavailability of the factual basis for the claim prevented petitioner from raising the claim.  *McCleskey v. Zant*, 499 U.S.

---

[8]  The "adequate and independent state grounds" rule applies equally to procedural and substantive state-law grounds.  *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

467, 497 (1991) (superseded by AEDPA statute, but holding is still good law as cited and followed by the Eleventh Circuit in *High*, 209 F.3d at 1262-63).   Recently the Supreme Court found cause due to petitioner's out-of-state counsel, who were on record as representing him in post-conviction proceedings, abandoned him without leave of court, without informing him they could no longer represent him, and without securing any recorded substitution of counsel.  *Maples v. Thomas*, --- S. Ct.---, 2012 WL 125438, *14 (January 18, 2012).   Therefore, petitioner had no knowledge that his time to appeal had lapsed, and showed ample cause to excuse the procedural default.  *Id*.

To meet the miscarriage of justice exception, petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent" because "it is more likely than not that no reasonable juror would have convicted him."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) (superseded by AEDPA statute, but holding is still good law as cited and followed by the Eleventh Circuit in *High*, 209 F.3d at 1270).   Further:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*  In short, actual innocence claims opening the gate for the miscarriage of justice exception are summarily rejected in virtually every case.  *Id.*

## Deference to state court findings of fact

Federal habeas courts defer to the state court's findings of fact, unless petitioner shows by clear and convincing evidence that it was unreasonable.  *See* 28 U.S.C. § 2254(d)(2); 28 U.S.C. § 2254(e)(1); *Callahan v. Hall*, 427 F.3d 897, 926 (11th Cir. 2005) (quoting the statute's language) ("[Section] 2254(d)(2) allows for relief

where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'").  Under the AEDPA, the state court does not have to explicitly state its findings of fact.  *See Blankenship v. Hall*, 542 F.3d 1253, 1271-72 (11th Cir. 2008).  State court findings of fact can be implied from the opinion and the record when they are necessary to the Rule 3.850 court's rejection of a petitioner's claim.  *Id.*  These implicit findings are entitled to deference.  *Id.*  As explained in the Standard of Review, *supra*, the state court is not required to cite or be aware of the relevant Supreme Court precedent as long as its conclusion is not contradictory.  *Early*, 537 U.S. at 8.  A summary adjudication with a brief, or total lack of, statement of reasons is still an adjudication on the merits.  *Harrington*, 131 S. Ct. at 780, 784; *see Childers v. Floyd*, 642 F.3d 953, 968 (11th Cir. 2011) ("an 'adjudication on the merits' is best defined as any state court decision that does not rest solely on a state procedural bar.")

Under Eleventh Circuit precedent, the habeas court will "'look through' a summary decision to the 'last reasoned decision' on the issue."  *McGahee v. Ala. Dep't of Corr.*, 560 F.3d 1252, 1262 n.12 (11th Cir. 2009) (quoting *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1317 (11th Cir. 2006)); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) (quoting *Coleman*, 501 U.S. at 740) (the *Harris* presumption only applies after the habeas court determines that "'the relevant state court decision. . .fairly appear[s] to rest primarily on federal law or [is] interwoven with [federal] law.'")

## PETITIONER'S GROUNDS FOR RELIEF

## I.    UNEXHAUSTED AND PROCEDURALLY DEFAULTED

**GROUND 1**        **Violation of Due Process under the 14th Amendment by State Court Allowing as Evidence the Taped Conversation**

Mr. Robinson alleges that because some of the recording was unintelligible, it was irrelevant and misleading (doc. 1, pp. 5-6).  He admits to the conversation, but argues that the trial transcript is inaccurate as to what he said.  *Id.* at 6.

**GROUND 3**        **Violation of Due Process under 14th Amendment due to Trial Court's Denial of Motion for Judgment of Acquittal as to Attempted Premeditated Murder**

Mr. Robinson claims that the evidence at most supported Attempted Second Degree Murder due to lack of evidence as to the premeditation factor of First Degree Murder (doc. 1, p. 7).

### State Court Decision

The First DCA did not hold a hearing, and  affirmed Mr. Robinson's conviction and sentence without issuing an opinion (ex. O).

### Federal Review of State Court Decision

Respondent contends that these two claims are unexhausted because Mr. Robinson presented them to the First DCA based solely on state law grounds, and they are therefore procedurally defaulted (doc. 15, pp. 8-31).  This court agrees.  As to ground 1, in his direct appeal to the First DCA, Mr. Robinson cited two state evidentiary rules to support his argument that the taped conversation should not have been admitted into evidence at trial (ex. L, p. 16).  Mr. Robinson relied solely on

Florida case law. *Id*. at 17-24, ex. N, p. 2-9[9].  As to ground 3, Mr. Robinson raised this sufficiency of the evidence claim strictly on state law grounds, failing to cite any federal case, or even mention the United States' Constitution in support of his arguments (ex. L, pp. 25-36, ex. N, pp. 9-11).

Therefore, Mr. Robinson failed to present these claims fairly to the state court so as to put it on notice of their federal nature. *Duncan*, 513 U.S. at 365-66.  Now, any further attempt at exhaustion in Florida courts would be futile because Mr. Robinson's claim would be procedurally barred under Florida law. *See Rodriquez v. State*, 919 So.2d 1252, 1262 n. 7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); *Smith v. State*, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.")  Mr. Robinson's argument in his reply that he cited a couple of Florida Supreme Court cases, which adopted or followed a United States Supreme Court case, is also unavailing (doc. 26, p. 2, n. 1 and p. 6).  The mere citing of a case that discusses constitutional issues is not enough to put the state court on notice of an alleged constitutional violation.

Moreover, Mr. Robinson has made none of the requisite showings to excuse his default.  He has not proffered any official impediment as the cause for his failure to fairly present this claim before the state courts.  He also has not presented the kind of new relevant evidence of innocence - not presented at trial - that would justify making a miscarriage of justice exception like in *Schlup*, 513 U.S. at 327.[10]

---

[9]Mr. Robinson cited a Third Circuit case, but not in order to further any argument of a constitutional violation (ex. N, p. 7, n. 5).

[10] The Supreme Court recently gave a specific example of the kind of new evidence necessary to excuse a procedural default.  *See House v. Bell*, 547 U.S. 518 (2006) (holding that there was sufficient evidence to allow the exception where there was new DNA evidence that contradicted the state's case; there was scientific evidence that the bloodstains upon which the state relied were the result of faulty evidence handling by law enforcement; there were new independent witnesses who credibly pointed to the likelihood that the murder was committed by someone else; and there was other evidence tending to negate the state's evidence).

Thus, these claims are procedurally defaulted and barred from federal review by this court.  *Coleman*, 501 U.S. at 734-35 and n.1; *Bailey*, 172 F.3d at 1302-03; *Judd*, 250 F.3d at 1313.


II.    MERITS


**GROUND 2**        <u>**Violation of Due Process under 14th Amendment due to Prosecution Expressing his Opinion as to the Tape Recording**</u>

Mr. Robinson avers that the prosecutor improperly commented during opening and closing arguments as to the contents of the tape recording (doc. 1, p. 7).


<u>**State Court Decision**</u>

The First DCA  affirmed Mr. Robinson's conviction and sentence without issuing an opinion (ex. O).


<u>**Federal Review of State Court Decision**</u>

Respondent contends that this claim is unexhausted and procedurally barred because Mr. Robinson's legal arguments here differ from his direct appeal to the First DCA.  This argument is unpersuasive.  In both Mr. Robinson's direct appeal and this petition, he argues the same issue: the prosecutor improperly  misconstrued and commented as to Mr. Robinson's answer to Ms. Austin's question "Why [are] you in jail?"  Also, Mr. Robinson cited two United States Supreme Court cases in support of his arguments that discussed severe prosecutorial misconduct violating defendant's right to a fair trial (ex. L, pp. 25-31).  Therefore, this claim was sufficiently presented to the state court so as to alert it to its federal nature, and it is not procedurally defaulted.

However, a review on the merits still does not warrant post-conviction relief. Prosecutorial misconduct can be a basis for relief if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quotations omitted). In determining whether arguments are sufficiently egregious to result in the denial of due process, the Eleventh Circuit has considered the statements in the context of the entire proceeding, including factors such as: (1) whether the remarks were isolated, ambiguous, or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the trial court's instructions; and (4) the weight of aggravating and mitigating factors. *Romine v. Head*, 253 F.3d 1349, 1369-70 (11th Cir. 2001).

First, Mr. Robinson's trial counsel did not object to the alleged improper comments, which is not surprising because once the tape was in evidence the prosecutor could make reference to it; so could Mr. Robinson's counsel. Second, Mr. Robinson's appellate counsel cited cases to the First DCA that detailed blatant prosecutorial conduct, which necessitated a new trial. A review of the trial transcript demonstrates that no such actionable conduct by the prosecutor exists in order to support such an outcome here. This supports the First DCA's affirming the conviction. Lastly, the jury had the opportunity to listen to the tape recording several times during the trial and during their deliberations in order to make up its mind as to its content, which negates any prejudice to Mr. Robinson.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)(2); *Williams,* 529 U.S. at 409. Therefore, Mr. Robinson is not entitled to federal habeas relief, and the writ should not issue.

**GROUND 4**          **Violation of Due Process under 14th Amendment due to First DCA**
                       **Affirming Per Curiam Mr. Robinson's Direct Appeal**

Mr. Robinson alleges that the appellate court overlooked the controlling points of law and fact in its ruling of his direct appeal (doc. 1, pp. 7-8). To the extent Petitioner contends that First DCA's affirmance of his conviction without written opinion violated his rights to due process, he has failed to demonstrate that the Constitution requires a state court to reduce to writing its analysis and decision on direct review of a conviction. Therefore, Mr. Robinson is not entitled to federal habeas relief.

**GROUND 5**          **Ineffective Assistance of Counsel, Violation of Due Process and**
                       **Right to Fair Trial under 6th and 14th Amendments due to Trial**
                       **Counsel's Failure to Object to Improper Comments by Prosecutor**

Mr. Robinson contends that his trial counsel rendered him ineffective assistance because he failed to object to the improper prosecutorial comments discussed in ground 2 supra (doc. 1, p. 11). He alleges that the prosecutor acted like an expert witness by interpreting the recording (ex. P, pp. 6-9).

**State Court Decision**

The Rule 3.850 court concluded that the prosecutor's paraphrasing of the taped recording, or referring to it as an admission, was not so prejudicial so as to vitiate the entire trial (ex. Q, p. 4). It added that because the issue could be reviewed on appeal despite the lack of objection by his trial counsel, Mr. Robinson's argument also failed in that regard because he could not establish prejudice. *Id*.

**Federal Review of State Court Decision**

In order to succeed on this claim, Mr. Robinson must show, first, that the prosecutor's behavior was improper. If the prosecution's behavior was not improper,

there was no basis upon which counsel could object.  It is long established Supreme Court law that prosecutors must refrain from improper methods calculated to produce a wrongful conviction; they may strike hard blows but are not at liberty to strike foul ones. *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935).  "A lawyer shall not . . . state a personal opinion as to . . . the credibility of a witness . . . or the guilt or innocence of an accused" and shall not "use arguments calculated to inflame the passions or prejudices of the jury." *Darden v. Wainwright*, 477 U.S. at 181 (citing Model Rules of Professional Conduct, Rule 3.4(e) (1984);  Code of Professional Responsibility, DR 7-106(C)(4) (1980);  ABA Standards for Criminal Justice:  3-5.8(b) (2d Ed. 1980)).

In applying the various professional standards to the conduct of attorneys who appear before them, courts must not lose sight of the reality that "[a] criminal trial does not unfold like a play with actors following a script." *United States v. Young*, 470 U.S. 1, 10, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (quoting *Geders v. United States*, 425 U.S. 80, 86, 96 S. Ct. 1330, 47 L. Ed. 2d 592 (1976)).  "[I]n the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to the accused." *Id.* (citing *Dunlop v. United States*, 165 U.S. 486, 498, 17 S. Ct. 375, 41 L. Ed. 799 (1897)).

Challenges to allegedly improper prosecutorial comments are not infrequent. However, in evaluating a prosecutorial indiscretion:

> it is not enough that the prosecutors' remarks were undesirable or even universally condemned. The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.

*Darden,* 477 U.S. at 181 (internal citations omitted); *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); *United States v. Young,* 470 U.S. at 10.  Inappropriate prosecutorial comments, standing alone, do not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding.  Instead, the remarks must be examined within the context of the trial.

*Young,* 470 U.S. at 11.  Furthermore, not every remark that stings is improper.  "In closing argument, a prosecutor is not prohibited from making 'colorful and perhaps flamboyant' remarks if they relate to the evidence adduced at trial." *United States v. Mock*, 523 F.3d 1299, 1302 (11th Cir. 2008) (*quoting United States v. Jacoby*, 955 F.2d 1527, 1541 (11th Cir. 1992)).

An analysis within the context of the entire trial of the alleged improper prosecutorial comments as to the what Mr. Robinson said and its legal interpretation that it is an admission does not demonstrate any impropriety.  The Rule 3.850 determined that these comments were not improper.  Nothing the prosecutor said infected the trial with unfairness so that the resulting conviction constituted a denial of due process to Mr. Robinson.  The undersigned is not persuaded by petitioner's arguments, nor that this is an unreasonable interpretation under *Strickland*.

Mr. Robinson failed to prove his trial counsel's performance was deficient, or that he suffered prejudice for his failure to object to the prosecutor's comments. Therefore, the state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1)(2); *Williams,* 529 U.S. at 409.  Mr. Robinson is not entitled to federal habeas relief, and the writ should not issue.

**GROUND 6**     <u>**Ineffective Assistance of Counsel, Violation of Due Process and Right to Fair Trial under 6th and 14th Amendments due to Trial Counsel's Failure to Investigate and Hire a Language Expert**</u>

Mr. Robinson alleges that because the tape recording was such a point of contention prior to and during the trial his trial counsel should have investigated and obtained the services of a language expert in order to authenticate what was said in the recording (doc. 1, pp. 11-12).  He argues that the language expert would have assisted the jury and prevented it from being mislead by the prosecutor (ex. P, pp. 10-

15).  He adds that the language expert could have prevented the admittance of the recording into evidence, and his conviction.  *Id.*

### State Court Decision

The Rule 3.850 court explained that during the trial, Mr. Robinson's counsel did not contest so much the words of the recording, but argued that they referred to another shooting his client was arrested for at the same time (ex. Q, pp. 5-6).  It concluded that what was at issue was Mr. Robinson's intent during that taped conversation, which he had the opportunity to provide during his trial testimony.  *Id*. Since a language expert would not have been able to discern his intent, then Mr. Robinson did not demonstrate the need for one.  *Id*.  The Rule 3.850 court also noted that because the victim identified Mr. Robinson as his shooter during his testimony, and picked Mr. Robinson out of photo lineup, there was compelling evidence aside from the taped recording that supported his conviction.  *Id*.  The court concluded that he therefore did not prove that his trial counsel's inaction affected the outcome of the proceedings.  *Id*.

### Federal Review of State Court Decision

The fatal defect in Mr. Robinson's position is his failure to offer any persuasive evidence that the language expert would have made a difference.  The Rule 3.850 court held that it would not.  Several facts support this finding.  As the Rule 3.850 court noted, the victim identified Mr. Robinson via a photo lineup and again during his testimony at trial.  Mr. Robinson speculates that it would have been easy to find a language expert, but he offers no evidence to support this, or that the expert would have supported his version of the taped recording.  This court will not "'blindly accept speculative and inconcrete claims . . . .'"  *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653 F.2d 942, 947 (5th Cir. 1981)).  Absent evidence in the record, a court cannot consider a habeas petitioners'

bald assertions on a critical issue in his petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Woodard v. Beto*, 447 F.2d 103, 104-05 (5th Cir. 1971).[11] Thus, mere conclusory allegations do not raise a constitutional issue in a habeas proceeding. *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980). The Rule 3.850 court's holding that Mr. Robinson's did not show prejudice is not an unreasonable application of *Strickland*. It ws not unreasonable for the Rule 3.850 court to find that trial counsel's performance was not prejudicial to Mr. Robinson in light of the victim's testimony.

The state court's ruling did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)(2); *Williams,* 529 U.S. at 409. Mr. Robinson is not entitled to federal habeas relief, and the writ should not issue.

GROUND 7        <u>Ineffective Assistance of Counsel, Violation of Due Process and Right to Fair Trial under 6th and 14th Amendments due to Trial Counsel's Entering Guilty Plea in Closing Argument</u>

Mr. Robinson asserts that his trial counsel made remarks to the jury during closing statements admitting Mr. Robinson's guilt as to the lesser-included offense, attempted voluntary manslaughter (doc. 1, p. 12, ex. P, pp. 16-19).

<u>State Court Decision</u>

The Rule 3.850 court quoted directly from the trial transcript what Mr. Robinson's trial counsel stated during closing arguments as to the lesser-included offense:

---

[11]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

**So I'm going to move to my backup argument.  Okay, I don't want to have to go to this argument because Joshua Robinson did not - - he was not the shooter.  But if you think he was the shooter, then there's other arguments because whoever the shooter was is overcharged, whoever he was.  Because in order for the shooter - - and we're saying it's someone not in this room - - the shooter to be convicted of first degree premeditated murder, attempted, attempted first degree premeditated murder, the prosecution has to produce sufficient evidence to show you what he was thinking.**

Ex. Q, p. 6 quoting ex. F, p. 308.  Counsel's argument reiterated that Mr. Robinson was innocent (ex. Q, p. 6).  Therefore, it concluded that trial counsel's back up argument as to the lesser-included charge was reasonable, and did not constitute concession of Mr. Robinson's guilt.  *Id.*

#### Federal Review of State Court Decision

As discussed in detail above, this court owes deference to the state courts' rulings, and cannot disturb them so long as there was a "satisfactory conclusion." *Williams,* 529 U.S. at 410-12; *see also Crawford*, 311 F.3d at 1295 (explaining that AEDPA provides for a "highly deferential standard of review" for factual determinations made by a state court).  A review of the trial transcript supports the Rule 3.850 court's conclusion.  Mr. Robinson's trial counsel did not state that Mr. Robinson was guilty of any crime.  He simply argued that if the jury believed the victim, then the shooter, not Mr. Robinson, at most should be convicted of attempted second degree murder due to the lack of premeditation evidence.  This constituted trial strategy.

Matters of trial strategy and tactics, unless plainly not within the bounds of reasonableness, and even if unsuccessful, do not constitute ineffective assistance. *Chandler*, 218 F.3d at 1316 n.16.  But not every strategic decision passes constitutional muster.  Whether a particular decision by counsel was a tactical one is a question of fact, *Hardwick v. Crosby*, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness.

*See* **28 U.S.C. § 2254(e)(1);** *Jackson v. Herring*, **42 F.3d 1350, 1367 (11th Cir. 1995);** *Horton v. Zant*, **941 F.2d 1449, 1462 (11th Cir. 1991).  Whether a particular tactical decision was a reasonable one, however, is a question of law,** *Hardwick,* **320 F.3d at 1163;** *Jackson*, **42 F.3d at 1367;** *Horton*, **941 F.2d at 1462, and habeas relief is mandated only where the trial court's decision was either contrary to, or an objectively unreasonable application of, clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1).**

**The undersigned agrees with the Rule 3.850 court that trial counsel's back up argument was a reasonable strategy.  The state court's decision was not contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1)(2);** *Williams,* **529 U.S. at 409.  Mr. Robinson is not entitled to federal habeas relief, and the writ should not issue.**

**GROUND 12** **Ineffective Assistance of Appellate Counsel and Violation of Due Process under 6th and 14th Amendments due to Appellate Counsel's Failure to Raise Argument that Trial Court Erroneously Denied Defense Motion to Suppress the Out-of-Court Photo Lineup Identification and to Bar In-Court Identification of Mr. Robinson**

**Mr. Robinson contends that the issue of suppression of the photo lineup was preserved for appeal, but his appellate counsel did not include it in his direct appeal to the First DCA (doc. 1, pp. 15-16, ex. U, pp. 5-9).  He argues that Mr. Nettles testified at his deposition and at trial that he only got a quick glance at a man in a bike.** *Id*. **He adds that Mr. Nettles did not see who shot him.** *Id*.  **He argues that during the suppression hearing, Detective Miller stated that Mr. Nettles did not provide a description of the shooter aside from him being a black male.** *Id*.  **He then concludes**

that the photo lineup was overly suggestive and should have been suppressed.  *Id*.

### State Court Decision

The First DCA denied Mr. Robinson's petition alleging ineffective assistance of appellate counsel without issuing a written opinion (ex. V).

### Federal Review of State Court Decision

This court gives deference to the First DCA's adjudication of Mr. Robinson's petition on the merits as long as its conclusion is not contradictory to clearly established federal law.  *See Harrington*, 131 S. Ct. at 780, 784; *Wright*, 278 F.3d at 1254-55.  The clearly established federal law governing ineffective assistance of appellate counsel is the same as set forth in *Strickland*: counsel rendered deficient performance, and the deficient performance prejudiced the petitioner.  Appellate counsel does not perform deficiently for failing to raise every non-frivolous ground for appeal.  *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 765, 145 L. Ed. 2d 756 (2000).  Indeed, "the practice of 'winnowing out' weaker arguments on appeal, so to focus on those grounds that are more likely to prevail, is the "hallmark of effective appellate advocacy."  *Hargrove v. Solomon*, 227 Fed. Appx. 806, 808 (11th Cir. 2007) (unpublished opinion) (citing *Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 2667, 91 L. Ed. 2d 434 (1986)).  Furthermore, for the petitioner to be prejudiced, he must show a reasonable probability that the outcome of the *appeal* would be different, not the outcome of the trial on remand.  *Clark v. Crosby*, 335 F.3d 1303, 1312 n.9 (11th Cir. 2003).

While ineffective assistance of appellate counsel is a question of federal law, federal habeas courts defer to the state court's decision regarding state law when the answer turns on whether counsel should have raised a state law issue.  *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superceded by statute on other grounds).

In Mr. Robinson's pre-trial motion to suppress, he argued that the description given by Mr. Nettles was so vague that detectives could not compose a photo array (ex. D). He also contended that the way the photo array was presented to Mr. Nettles was unduly suggestive and gave rise to a substantial likelihood of misidentification. *Id.* He concluded that this in conjunction with the fleeting opportunity Mr. Nettles had to view the perpetrator should bar an in-court identification. *Id.* He requested that both the photo array and the in-court identification be suppressed. *Id.* After a hearing where both Detective Miller and Mr. Nettles testified, the court issued its ruling finding that the lineup was not suggestive in any way and denying the motion to suppress (ex. F, p. 105).

In Florida, the suppression of an out-of-court identification entails a two-part test: (1) whether the police used an unnecessarily suggestive procedure to obtain it, and if so (2) considering all of the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification. *Rimmer v. State*, 825 So.2d 304, 316 (Fla. 2002). The trial court must consider the following factors while deciding the likelihood of misidentification: (1) opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, (5) and the length of time between the event and the confrontation. *Id.* However, if the court determines that the out-of-court identification procedure was not unnecessarily suggestive, then it does not have to consider these factors as part of the test's second prong. *Id.*

The trial court did not find the photo lineup and the procedure employed by Detective Miller as unnecessarily suggestive. The undersigned agrees. Before showing the photo lineup, Detective Miller warned Mr. Nettles that the shooter's picture might not be in it (ex. F, pp. 84-89). Then, Detective Miller showed Mr. Nettles the pictures, and almost immediately Mr. Nettles pointed to Mr. Robinson's picture

(ex. F, p. 85).  There is nothing in the record that supports Mr. Robinson's argument that this procedure was suggestive.

Appellate counsel cannot be deemed ineffective for failing to raise issues "reasonably considered to be without merit."  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord*, 725 F.2d at 1291), cert. denied, 531 U.S. 1131, 121 S. Ct. 892, 148 L. Ed. 2d 799 (2001).  Further, the argument omitted from the appeal must have been significant enough to have affected the outcome of the appeal.  *Nyhuis*, 211 F.3d at 1344 (citing *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988)).  The court hereby holds that the omission of this suppression issue would not have affected the outcome of the appeal.  *See Pagan v. State of Florida*, 830 So.2d 792, 806 (Fla. 2002) (on appeal, the trial court's decisions are given a high deference and all evidence and reasonable inferences are viewed in the light most favorable to sustaining its ruling).  Moreover, "[i]t is difficult to win a *Strickland* claim on grounds that appellate counsel pressed the wrong legal arguments where the arguments actually pursued were reasonable in the circumstances."  *Johnson v. Alabama*, 256 F.3d 1156, 1188 (11th Cir. 2001), cert. denied, 122 S. Ct. 1295, 152 L. Ed. 2d 208 (2002).

Mr. Robinson failed to establish any prejudice under *Strickland*.  The First DCA's decision was not contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1)(2); *Williams,* 529 U.S. at 409.  Mr. Robinson is not entitled to federal habeas relief, and the writ should not issue.


**GROUND 13**          <u>Ineffective Assistance of Appellate Counsel and Violation of Due Process under 6th and 14th Amendments due to Appellate Counsel's Failure to Raise Argument that Trial Counsel was Ineffective for Failing to Object to Improper Prosecutorial Comments</u>

Mr. Robinson contends that the many remarks by the prosecutor during trial, which went unobjected to, amounted to ineffective assistance of counsel by his trial counsel (doc. 1, pp. 17-18, ex. U, pp. 10-18).  Therefore, he argues that his appellate counsel's failure to argue this in his direct appeal to the First DCA constitutes ineffective assistance of appellate counsel.  *Id.*

### State Court Decision

The First DCA denied Mr. Robinson's petition alleging ineffective assistance of appellate counsel without issuing a written opinion (ex. V).

### Federal Review of State Court Decision

"Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."  *Diaz v. Sec'y for the Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) (citing *Card v. State*, 497 So.2d 1169, 1174, 1177 (Fla. 1986)).  Therefore, since this alleged error was not preserved for appeal, Mr. Robinson's appellate counsel was not ineffective under *Strickland* for failing to raise it.  Mr. Robinson is not entitled to federal habeas relief, and the writ should not issue.

## III.    UNREVIEWABLE

**GROUND 8**          **Violation of Due Process under 14th Amendment due to Rule 3.850 Court's Denial of Post-Conviction Relief Without An Evidentiary Hearing as to Ineffective Assistance of Counsel Claim Regarding Improper Comments by Prosecutor**

**GROUND 9**          **Violation of Due Process under 14th Amendment due to Rule 3.850 Court's Denial of Post-Conviction Relief Without An**

**Evidentiary Hearing as to Ineffective Assistance of Counsel Claim Regarding Failure to Hire Language Expert**

**GROUND 10**   **Violation of Due Process under 14th Amendment due to Rule 3.850 Court's Denial of Post-Conviction Relief Without An Evidentiary Hearing as to Ineffective Assistance of Counsel Claim Regarding Improper Comments by Prosecutor**

**GROUND 11**   **Violation of Due Process under 14th Amendment by First DCA Affirming *Per Curiam* Mr. Robinson's Appeal of Rule 3.850 Court's Denial of Post-Conviction Relief and First DCA's Denial of Mr. Robinson's Motion for Rehearing**

**GROUND 14**   **Violation of Due Process under 14th Amendment by First DCA Affirming *Per Curiam* Mr. Robinson's Petition for Writ of Habeas Corpus for Ineffective Assistance of Appellate Counsel and First DCA's Denial of Mr. Robinson's Motion for Rehearing**

Due process violations during state post-conviction proceedings do not form the basis of habeas relief. *See Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009); *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004). The habeas statute permits federal courts to grant habeas relief to state prisoners on the ground that they are "in custody pursuant to the judgment of a State court" in violation of federal law. 28 U.S.C. § 2254(a). State post-conviction proceedings are not the "judgment" that resulted in the prisoner's detention. *See Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself . . . ."). Post-conviction proceedings are instead "civil in nature and are not part of the criminal proceeding

itself." *Pennsylvania v. Finley*, 481 U.S. 551, 556–57, 107 S. Ct. 1990, 1994, 95 L. Ed. 2d 539 (1987).   Therefore, procedural violations during state post-conviction proceedings are "issues unrelated to the cause of the petitioner's detention." *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987).  As such, they cannot form the basis for habeas relief.  *See, e.g., Carroll*, 574 F.3d at 1365 (holding that a failure to hold an evidentiary hearing in a state post-conviction proceeding was not a basis for habeas relief); *In re Rutherford*, 437 F.3d 1125, 1127 (11th Cir. 2006) (finding insufficient for habeas relief the petitioner's claim that the state post-conviction court denied him due process by failing to provide mental health records of a person the petitioner alleged had actually committed the crime) (citation omitted); *Quince*, 360 F.3d at 1262 (rejecting a habeas petition, which alleged that the state judge presiding over the petitioner's post-conviction hearing denied the petitioner due process by not recusing himself, because the claim did not relate to the petitioner's conviction).

The due process violations alleged by Mr. Robinson in grounds 4, 8-11 and 14 occurred during state post-conviction proceedings, not during his criminal trial.  The process afforded Mr. Robinson during that proceeding, including appellate review of the lower court's denial of his post-conviction motion, therefore had no bearing on the judgment that led to his conviction and sentence.  A writ of habeas corpus is not the proper remedy for this alleged wrong.

## CONCLUSION

The undersigned has carefully reviewed the trial transcript, post-conviction motions, orders, records on appeal, and all submissions in this proceeding.  Mr. Robinson's claims are without merit and he is not entitled to federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(a), Rules Governing Section 2254 Cases. A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.     That the 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Robinson* in the Circuit Court of Escambia County, Florida, case no. 04-CF2689, be DENIED and the clerk be directed to close the file.

2.     That a certificate of appealability be DENIED.

**At Pensacola, Florida, this 2nd day of March, 2012.**

/s/ *Miles Davis*
> **MILES DAVIS**
> **UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties</u>.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**